I represent the appellant Jose Luis Lopez-Zamora. Your Honor, this case should be remanded for resentencing because the district court came to the mistaken legal conclusion that it could not grant Lopez-Zamora both an over-representative criminal history departure and an offense-level departure based on his predicate crime of being outside the heartland of crimes that typically receive the 16-level enhancement under guideline provision section 2L1.2B1A. In both his written motion for a downward departure and at the sentencing hearing, Lopez-Zamora moved the court to grant him two separate departures. The first was for an over-representative criminal history per 4A1.3 based on the fact that Lopez-Zamora's criminal history category overstated the severity of his crimes and exaggerated the likelihood that he would commit future crimes. This was a departure request that the court had previously granted at the first sentencing in November 2001. The second main departure request was for an offense-level departure based on this Court's precedent in the United States v. Sanchez-Rodriguez and the Supreme Court's holding in Kuhn v. United States. A Sanchez departure requires the sentencing court to measure whether the nature and circumstances of the underlying aggravated felony removes the defendant's case from the heartland of other offenses that typically trigger section 2L1.2B1A enhancements. What do you have, you know, what do you have in the record that you can point to that supports your argument that the district court, I guess, mistakenly believed that, what, either it couldn't do it or it already did it? There's two instances specifically in the record, Justice Schema. The first is, after I outlined the case for a Sanchez departure, the court heard from the government. And this is on page 15 of the excerpts of record. And in response to my Sanchez departure, the government stated, Your Honor, the court the first time around granted a downward departure for overrepresentation of criminal history. I'll skip ahead to the last time where he says, it's not clear to the government that really anything different needs to be done this time around than was done the first time around. There, the government did not respond to the Sanchez departure. It only responded to the overrepresentation departure. And then skipping ahead, if you look at page 18 of the excerpts of record, when the – when Judge Lorenz stated that he was granting a departure on overrepresentation, he stated, I'm departing for overrepresentation on other grounds. And as the grounds set forth in the record, I think this is the case. What line are you on there? Okay, go ahead. And then on page 18, lines 1 and 2. Okay. And there he says, and as the grounds set forth by the defense in their paperwork, I think the Sanchez case. However, Lopez Mora never moved for an overrepresentation criminal history departure based on the Sanchez case. That was a completely separate departure based on his offense level. And as the Court never stated its reasoning behind not granting the Sanchez-Rodriguez departure, I brought it to the Court's attention again later on in the transcript. Okay. Let's suppose that we agreed with you that the district court simply missed the Sanchez-Rodriguez request that you made. Why don't the 1997 and 2001 changes in the guidelines address that? It seems that the Sentencing Commission was very much aware of our opinion in Sanchez-Rodriguez and attempted to address that directly. Why aren't those changes applicable here? Those changes aren't applicable because what the Commission did was it created graduated levels of sentence enhancements from 4 to 16, as you see. What they stated in the amendment was that this is going to their thinking as the seriousness as to classes of offenses, not as to the seriousness as to the way the offense is committed. And they say as much in the amendment, 632, when it says defendants who were convicted of murder were receiving the same enhancement penalty as those that were convicted of simple assault. Thus, the 1997 and 2001 amendments don't specifically state that a departure based on the overstating the seriousness of the prior crime cannot be granted. Well Is it an unaddressed factor, then? It is completely an unaddressed factor. Let me ask you, if we were to agree with you and say, because they eliminated comment 5, is that right? Correct. And so if we were to agree that the judge misapprehended the nature of the departure and the amended guidelines leave it as an available but unaddressed basis, then the third question we would have to answer is whether it was harmless in light of what the judge said here. And he had two occasions where he seemed to make kind of a boilerplate statement to the effect of a sentence was sufficient but not greater than necessary to reflect the seriousness of the offense. So I'm wondering, does that impute a judgment about the minor, as you, you know, you consider minor nature of that drug offense? I don't believe it does, Judge McEwen. First, the district court never engaged in any analysis of whether Sanchez applied or not. It never stated that the elements present in the Sanchez matter were not present in Lopez-Amor's matter. It never stated that Sanchez's case was not analogous to Lopez's case. He failed to exercise any discretion. So that removes the harmless error threshold in this instance. And when you say he didn't exercise any discretion, is it your view that he simply didn't address it because he didn't think he – it was available to him? Correct. He mistakenly – Oh, or he just forgot about it. Or forgot. It was – you brought it up and then it fell off the table. Correct. Again, I can't speak for what the district court's thinking specifically was, but he either, A, mistakenly conflated the two, or, B, in – after the government's responded, nothing further needed to be done in this case than was done the first time around, he just went back to his memory and granted the overrepresentation or reasoned, unintended departure, not realizing that these were two separate departures, one on the horizontal axis of the Guidelines and one on the vertical axis. Well, it was kind of a – you know, as I read the transcript, it's kind of a confused hearing, because so many issues were raised. But getting back to Judge Bivey's question about the amendment, if I should say the amendment doesn't cover this situation, it is graduated, right? In other words, that's a change. What is it based on, then, the amendment? Again, as I say to my colleagues. I know. What factors are taken into account? The factors were, as stated in the amendment, crimes in varying degrees of seriousness of the actual classes of the crimes, from assault to murder, were having the same 16-level enhancement prior to the 2001 amendment. Here they created graduated levels on the distinction at that basis. If the Commission wanted to explicitly state that a departure for – under the Sanchez-Rodriguez was not allowed, it would have said so. The Guidelines are full of examples of where they have explicitly stated. For example, in Section 5K2.12, the last sentence of that provision reads, The Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence. So the Commission was acutely aware of what Sanchez-Rodriguez held in regards to the minor nature of the conviction. The amendment in 2001 in the commentary notes the distinction regarding the three factors in the 97 amendment. The Commission did not say – I want to make sure. Are you contending that Sanchez-Rodriguez remains good law after the 2001? The holding of Sanchez-Rodriguez, that a departure can be graded – can be granted on the overstating, the seriousness of the crime, is still good law, because it's still – the Commission has not put into place whether that specific basis for departure cannot be precluded. But the commentary also says that with this – with these changes, we had a 97 and then the 2001 changes, that the circuit conflict, including Sanchez-Rodriguez, which it cites, says is mooted. It says that the Commission at least seemed to think that there was no longer going to be any dispute under Sanchez-Rodriguez. If you look at what the Commission was referring to in the Sanchez-Rodriguez case, they were referring to a footnote. Sanchez-Rodriguez came – was decided in 98, and in footnote – in footnote 10, it states that the 97 amendments had just come out, and they didn't make a specific holding on the 97 amendments, whether the three factors present in the 97 amendment had any holding – any basis for holding that the 95 amendment did not apply. So the Commission did not specifically preclude what the – this circuit held in Sanchez-Rodriguez, that the minor nature of the underlying aggravated felony cannot be taken into account by the district court in sentencing. If possible, I would like to reserve my last 30 seconds for rebuttal, unless the panel has any other questions. Thank you. Thank you. Excuse me. May it please the Court? Carl Sandoval on behalf of the United States.        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I only have a couple of prepared remarks, which would simply reiterate some of the points made in the brief. So what I'd like to do, if I might, is address a couple of the issues that Defendant's counsel has brought up and that Your Honors have discussed with them. First, with respect to the issue of a mistaken legal conclusion, perhaps the transcript is not as full or precise as the defendant might have wanted, but there is certainly no clear statement in the transcript, no clear unambiguous statement in the transcript that the district court lacked discretion. That was not what was at issue there. Now, defense counsel mentions that the government at one point says that the government doesn't feel that anything different needs to be done. I don't think that's in any way dispositive here. Essentially, the government is saying that even with this resentencing, even with the new motion for downward departures, the appropriate result is still the 57 months that were, in fact, imposed. It's also important, I think. Your argument just suggests that the failure to address the Sanchez-Rodriguez means that it was implicitly considered? Is that your argument? Well, a couple points on that, Your Honor. First, I don't think that the Court was required necessarily to give a reason for what it did, and I think there is some case law that says that even silence regarding its authority to depart is not sufficient. If I'm understanding your question, I think that, in fact, the Court did look at Sanchez-Rodriguez as well as the other grounds for downward departures that were brought in the defense motion. What is the best location in the transcript for that statement? Well, I don't think that the Court comes out and says, I have, I think the Court does, in fact, address the various issues that were brought up. There is a lengthy discussion of the criminal history. There is a discussion of Sanchez-Rodriguez both at the beginning and the end of the transcript, and there is also a lengthy discussion regarding overrepresentation. And this was a case where the government did not oppose the overrepresentation departure. Just by way of some factual background that I do think is important to understanding the transcript in context, at 2.54 p.m. on the day before sentencing, the defendant served a motion for downward departures on four separate grounds. So with that as some factual background, I think the district court did believe that it had discretion. It exercised that discretion and did so to the benefit of Mr. Lopez-Zamora, who, of course, had turned down a plea bargain offer of 24 months. The Court did exercise discretion, effectively reducing his sentence from 70 months at a higher criminal history level to 57 months. Again, the district court never said in a clear, unambiguous statement that it lacked authority to depart. And, in fact, it did depart in Mr. Lopez-Zamora's favor. If I may briefly address Judge Bybee's questions and comments regarding the import of the 1997-2001 amendments, I think it is particularly helpful to look at the actual text of the amendment and the commentary there. I think that the appellant in this case simply chooses to act as if the words are different than, in fact, they are, among other things. And I won't belabor this point, but certainly in the reason for the amendment, the commission says it recognizes that there are concerns regarding disproportionate penalties. It says the criminal justice system has been addressing it on an ad hoc basis by the increased use of departures. This amendment responds to these concerns by providing them. Kennedy. What are you reading from there, precisely? Your Honor, this is Amendment 632. Kennedy. Yes. This is the amendment that enacted the 2001 version. Kennedy.  What are you reading? It's page at least in the supplemental appendix C. This is page 218 and 219, and this is the text that's called Reason for Amendment. This is cited at length in the government's brief as well. Yes. Go ahead. Again, it says, This amendment responds to these concerns, again regarding disproportionate penalties, by providing a more graduated sentencing enhancement of between 8 levels and 16 levels depending on the seriousness of the prior aggravated felony. Clearly, the Sentencing Commission has looked at the issue of seriousness. We have in the 1997 amendment, application note 5. There are a number of cases, including the Mechice-Duarte opinion in this circuit, that says if the defendant qualifies under application note 5, then they would fall outside the heartland of the guidelines and would be appropriate for a possible person. Well, what about the argument that, although I appreciate that commentary, if you look at the language of the amended guideline itself, the different classes or the graduations are based upon the type of offense and have nothing to do with the circumstances of the offense, which is what Sanchez-Rodriguez is concerned with, right? Well, I think that certainly Sanchez-Rodriguez does talk about the what is characterized as a seriousness of offense. I think that was a $20 heroin transaction. I think if you look at Mechice-Duarte, which talks about the 1997 amendment, which again is the precursor to the 2001 amendment, Mechice-Duarte says even taking Kuhn, which of course is what Sanchez-Rodriguez relied on, that when you look at Kuhn in light of the 1997 amendment, again the precursor to 2001, it comes up with a very sound analysis regarding what the appropriate way to treat seriousness is, and that is to essentially not usurp the sentencing commission's job in terms of dealing with issues of seriousness. Again, the reason for the amendment, as stated here, looks specifically at Sanchez-Rodriguez. It is not as if they were turning a blind eye to Sanchez-Rodriguez. I think it's very much taken into account. And with the graduated penalties, this certainly addresses, I think, the issue of seriousness, although it does not on its face use the term seriousness. Kagan. That's actually the difficulty I'm having. Maybe you can help me with that, because we always sound like we're splitting hairs in these sentencing cases, because I think we are, given some of the language in the cases about linguistics and that sort of thing. So if you just go back to basic principles, back to Kuhn, where they say we cannot categorically forbid a district court from deporting downward on any basis except for those specifically prescribed in the guidelines. If I take that along with your statement that the guidelines don't specifically prescribe that, it kind of, to my mind, brings me back to Kuhn. I think they had in mind some seriousness, but instead they made almost, they made identifiable categories which are not the same as a broad brush of seriousness. So I guess I'm having a little trouble taking Kuhn and then your argument and their argument and then looking at the guidelines and saying, well, I don't see it there, so I don't know that we have any choice. So I'd appreciate a response if you can to that. My comment regarding the current version of the, well, let's say the 2001 version of 2L1.2, I mean, I can't dispute that on its face it does not use the word seriousness. I think taken in context, including the amendment, the reason for the amendment, the lengthy language that's in the government's brief as well as part of which I've just described, I do think certainly encompasses the notion of seriousness, encompasses Sanchez-Rodriguez, and the issues regarding disproportionate penalties based on seriousness that had come up to that point. If I could just add to that. Kennedy. Well, let me ask this. Government position. Bottom line, is Sanchez-Rodriguez still good law? I don't think so, Your Honor. I think that. Or do you think this amendment, in effect, overruled Sanchez-Rodriguez? Well, I think that after Machice Duarte and the two amendments, the district depart based on their views of the relative seriousness of offenses. If I might address Judge McHugh's question very briefly regarding Kuhn, and I know I'm running out of time here, the defendant suggests that this is an unmentioned category, an unmentioned characteristic, if you will. The government doesn't agree with that, but let's work on that basis. All right. On this page, I believe, 2045 of the Kuhn opinion, and it says here that if a factor is unmentioned in the guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the guidelines taken as a whole, decide whether it is sufficient to take the case out of the guidelines heartland. And here, even if we accept that it's an unmentioned factor, I think that, again, looking at the amendment, the language that is directly on point in the reasons for the amendment, I think it makes it clear that even under Kuhn, and taking into account the Machice Duarte analysis, that there simply is no room for district courts any longer to look at the relative seriousness of the underlying predicate offenses in a case like this. Let me ask this question now. How shall I ask it? The I guess you call it review of a departure now is de novo. Right. On appeal. You know, if it if a court trial court departs, makes a departure either way, say in favor of the defendant in the government appeals. We look at it de novo. Right. Under this new law. Forget what it is. Not the Patriot Act. What is it? The Protect Act. Protect Act. Now, in view of that level of level of review, can we sort of look at this and say, well, you know, even if the district court might have exercised discretion and granted this departure, we would have not approved it de novo anyway, so it's harmless error? Well. Do you ever think of that? I didn't think of that until just this moment, I guess, Your Honor. But certainly, I think the court did, the court below did exercise its discretion because there, I'm hoping I'm addressing your question directly, but because there is no departure based on relative seriousness under 201.2, I guess you could say no harm, no foul. In other words, the decision of the district court is an appropriate one in this case based on these facts. Again, based importantly on the amendments in 2001, 1997, and the Mechice Duarte opinion, which is out of this circuit. Counsel, did the government object at all to the citation of Sanchez-Rodriguez when it was raised to the district court? I don't believe it did. And again, just by way of context, in the motion for downward departures that the sentencing, there was no discussion in those papers of the 1997 amendment. And again, Sanchez-Rodriguez is a 1995 guidelines case. There's no discussion of the 2001 amendment, nor is there discussion of Mechice Duarte, 97, 2001, or the lengthy discussion of the 2001 amendment that preceded the actual 2001 guideline, if you will. All right.  Thank you, Your Honors. Okay, we'll hear rebuttal. I'll give you a minute, all right? Three quick points, Your Honors. First, I didn't bring up the fact that the government's statement regarding the response to the Sanchez departure was dispositive, but it did contribute to the Court's confusion. In regards to the silence issue that the government brings up, it was understood by Lopez Amor that silence is deadly on appeal. That's why in the transcript of the second time, it was brought up in front of Judge Lorenz to find out whether he would actually address the Sanchez departure. And that is an excerpt from record page 18 and 20. Third, the government states that the 2001 amendments go to the disportion or take care of disproportionate penalties based on the seriousness of the crime. And that is exactly correct. Disproportionate penalties based on the classes of levels of seriousness of the crime. The amendment says ---- Isn't that now addressed in the guidelines that give sort of graduated enhancements ranging up to 16 levels? Exactly. That's exactly what ---- Should the district court have applied the 2001 guidelines? It should have applied the 2001 guidelines. That doesn't change anything because they're still required to operate under Sanchez Rodriguez? Well, Sanchez Rodriguez just states that you can take into account the relative seriousness of the underlying crime. It doesn't say anything about whether or not simple assault is the same as murder. The amendment speaks to that. And this circuit in United States v. Rodriguez-Lopez, which was issued on December 20, 1999, also reaffirmed the Sanchez holding that the minor nature of the underlying felony that triggers a 16-level enhancement can be taken into account. Now, the amendment does not speak of Rodriguez-Lopez. It only speaks to Sanchez based on Application Note 5, which was not even ---- went to the cause or the holding of the Sanchez opinion. It was a, you know, it was a dicta type of issue. Well, it went to dicta in a 1995 or 1998 opinion applying 1995 guidelines at a time, and the 1997 guidelines were coming in and were not applicable in that case. So it's understandable that it's dicta, but it nevertheless was ---- has had a substantial impact on our jurisprudence. I understand that. But again, as this circuit has stated and the Supreme Court has stated, unless the commission has categorically precluded a basis for departure, courts cannot do so. And nowhere in the 2001 amendment, the Application Note, or the actual provision of 2L1.2, does it say that you cannot take into account the relative seriousness of the underlying aggravated offense in considering a departure request. Okay. But the 1997 guidelines, at least, did say there are three things that you must satisfy. You must satisfy all three. And if you don't, then you don't get a downward departure. That would have ---- the 1997 guidelines that are applicable here would seem to be clear that your client would not be entitled to a downward departure. Isn't that correct? They are clear in that statement, but they are not applicable here. And you're saying that then the 2001, that the Consent of the Commission has backed off what it said in 1997 as a clarification of the 1995 guidelines? Well, it only goes to the disproportionate penalties based on, you know, again, I'm going back to this example. Assault and murder were getting the same 16 levels. They just created levels of enhancement. They didn't state anything based on the overstating the seriousness of the crime. All right. Thank you. Thank you. We thank both. So you think this is a simple case on whether the whether the district court one had the authority and to get discretion. But I guess it's not as simple as it might have been. We thank both counsel for your very fine argument. Very helpful. Thank you. This case is now submitted for decision. Next case on the record. Excuse me. On the argument calendar is one to Kelly versus the county of Orange. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you.
judges: Tashima, McKeown, Bybee